|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | UNITED STATES DISTRICT COURT | |
| 9 | WESTERN DISTRICT OF WASHINGTON AT SEATTLE | |

| | | |
|---|---|---|
| 10 | DOUGLAS J. VANDERPOL, a Washington resident, | CASE NO. C12-773 MJP |
| 11 | Plaintiff, | ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, |
| 12 | v. | DEFENDANT'S MOTION TO SUPPLEMENT THE PLEADINGS, |
| 13 | STEVE SWINGER and JANE DOE | PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, |
| 14 | SWINGER, and THE UNITED STATES OF AMERICA, GSA FUND, a | DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS, AND |
| 15 | government entity, | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| 16 | Defendants. | |

This matter comes before the Court on Defendant's motion to supplement the pleadings (Dkt. No. 14), Plaintiff's motion to dismiss counterclaims (Dkt. No. 9), Plaintiff's motion for partial summary judgment (Dkt. No. 11), Defendant's motions for discovery sanctions (Dkt. Nos. 22 and 29), and Defendant's motion for summary judgment (Dkt. No. 21.)  Having reviewed the motions, the responses (Dkt. Nos. 16, 20, 23, 36), the replies (Dkt. Nos. 31, 33, 34),

ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, DEFENDANT'S MOTION TO SUPPLEMENT THE PLEADINGS, PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 1

and all related filings, the Court DENIES Defendant's motion to supplement the pleadings, GRANTS Plaintiff's motion to dismiss, DENIES Plaintiff's motion for partial summary judgment, DENIES Defendant's motion for discovery sanctions, and DENIES Defendant's motion for summary judgment.

**Background**

Plaintiff Douglas Vanderpol ("Vanderpol") is suing Steven Swinger ("Swinger") and the United States for quiet title. Acting pro se, Swinger's answer asserted a counterclaim for unjust enrichment.

Vanderpol, the United States, and Swinger all own property on the Nooksack River. At some point, Swinger sought to place his property in the Conservation Reserve Enhancement Program ("CREP"). CREP is a land retirement program in which property owners are paid to commit agricultural lands for preservation; it is administered at the national level by the USDA's Farm Service Agency and at the local level by the Whatcom Conservation District ("District").

When Vanderpol learned of Swinger's plan to commit property on the left bank to the CREP, he informed the District that a portion of the land ("Disputed Land") was actually owned by him or the United States. Vanderpol concedes the Disputed Land was once a part of Swinger's land on the right bank of the Nooksack River, but alleges that, through accretion, the land is now part of the left bank. Alternatively, Vanderpol argues he has title due to adverse possession given that he has used the land as a grass feeding area for dairy cows.

The Court has subject matter jurisdiction exists over this action under 28 U.S.C. § 1346(f)("[D]istrict courts have exclusive original jurisdiction under § 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."). While

ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, DEFENDANT'S MOTION TO SUPPLEMENT THE PLEADINGS, PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 2

the heart of the dispute is between Vanderpol and Swinger, the United States has a property interest in the Disputed Land.

## Analysis

1. <u>Vanderpol's motion to dismiss counterclaims (Dkt. No. 9)</u>

Vanderpol seeks to dismiss Swinger's counterclaim for unjust enrichment. Vanderpol argues the claim is barred by Washington's Act Limiting Strategic Lawsuits Against Public Participation ("Anti-SLAPP").

Under Washington's Anti-SLAPP statute, "a person who communicates a complaint or information to any branch or agency of federal, state, or local government…is immune from civil liability for claims based upon the communication to the agency or organization." RCW 4.24.510. A person who prevails on this defense "is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars." RCW 4.24.510. However, if the complaint or information was communicated in bad faith, the court may decline to award statutory damages. <u>Id.</u> The purpose of Washington's Anti-SLAPP statute is to encourage the reporting of potential wrongdoing to governmental entities. <u>Bailey v. State</u>, 147 Wash.App. 251, 262 (2008). In other words, it "protects advocacy to government, regardless of content or motive, so long as it is designed to have some effect on government decision making." <u>Id.</u>

Here, Vanderpol is immune from liability because Swinger's allegations stem from Vanderpol's communications with the District, which is a "governmental subdivision of this state." RCW 89.08.020. Specifically, Swinger alleges Vanderpol notified the CREP program that the land Swinger sought to commit may not actually be Swinger's. (Dkt. No. 16.) While

ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, DEFENDANT'S MOTION TO SUPPLEMENT THE PLEADINGS, PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 3

1  Swinger argues the Anti-SLAPP statute does not apply because Vanderpol's communication did
2  not relate to any "wrongdoing" by Swinger and/or any issue of reasonable concern to the agency,
3  both arguments are misplaced.  Swinger sought to enter the CREP program in order to obtain
4  government funds in exchange for committing the Disputed Land to a particular use.  This is a
5  substantive issue of some public interest or social significance.  See Right-Price Recreation, LLC
6  v. Connells Prairie Community Council, 146 Wash.2d 370 (2002).  Regardless if Vanderpol was
7  attempting to profit financially, title to the land promised for the CREP program is a reasonable
8  concern to the agency.  The Court finds Vanderpol's communications with the District are
9  immune from liability.
10     The next question is whether to impose statutory damages on Swinger, who is pro se.
11 Statutory damages are mandatory under the Anti-SLAPP statute, but they "may be denied if the
12 court finds that the complaint or information was communicated in bad faith."  RCW 4.24.510.
13 Here, Swinger fails to show Vanderpol's communications with the District were in bad faith.  At
14 most, Springer argues Vanderpol once approved of Swinger's CREP proposal, but later changed
15 his mind and that Vanderpol acted in bad faith by filing this action for quiet title and adverse
16 possession.  The Court finds Vanderpol's indecision and assertion of his property rights do not
17 amount to bad faith.
18     The Court GRANTS Vanderpol's motion to dismiss counterclaims and award Vanderpol
19 attorneys' fees in bringing this motion and statutory fees.
20   2.  Swinger's motion to amend ("supplement the pleadings") (Dkt. No. 14)
21     Swinger seeks to amend his answer/counterclaim to add a claim for tortious interference
22 with a contract or business relationship.

ORDER ON PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS, DEFENDANT'S MOTION
TO SUPPLEMENT THE PLEADINGS,
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT, DEFENDANT'S
MOTION FOR DISCOVERY SANCTIONS, AND
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 4

1     Federal Rule 15(a) provides that courts shall freely give parties' leave to amend pleadings

2 when justice so requires. Fed. R. Civ. P. 15(a).  In <u>Foman v. Davis</u>, the United States Supreme

3 Court clarified that district courts should freely grant leave, absent specific factors.  371 U.S.

4 178, 182 (1962). These factors include undue delay, evidence of bad faith or dilatory motive on

5 the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

6 undue prejudice to the opposing party, and futility of the amendment. <u>Id.</u>

7     Here, Swinger's amendment is futile.  Swinger's tortious interference counterclaim stems

8 from the same acts as his unjust enrichment claim—i.e., Vanderpol's communications with a

9 government agency.  As discussed above, Vanderpol is immune from civil liability for his

10 communications with the District.  Since Swinger's motion to amend would be futile, the Court

11 DENIES Swinger's motion to amend.  Fed. R. Civ. P. 15.

12     3.  <u>Vanderpol's motion for partial summary judgment (Dkt. No. 11)</u>

13     Vanderpol seeks partial summary judgment on the issue of whether Swinger can recover

14 rent, the value of the property, or taxes paid if any of the disputed area is quieted in Vanderpol's

15 name.  The Court finds Vanderpol's motion is premature.

16     "The role of the courts is neither to issue advisory opinions nor to declare rights in

17 hypothetical cases, but to adjudicate live cases or controversies." <u>Maldonado v. Morales</u>, 556

18 F.3d 1037, 1044 (9th Cir. 2009).  Ripeness is both a constitutional and a prudential doctrine

19 intended to "prevent the courts, through avoidance of premature adjudication, from entangling

20 themselves in abstract disagreements." <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148 (1967),

21 <u>overruled on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99 (1977).  The prudential inquiry

22

23 ORDER ON PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS, DEFENDANT'S MOTION
TO SUPPLEMENT THE PLEADINGS,
24 PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT, DEFENDANT'S
MOTION FOR DISCOVERY SANCTIONS, AND
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 5

weighs "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." Id.

Here, Vanderpol seeks to preclude Swinger's claims in the event that Vanderpol prevails; however, it is not clear whether Vanderpol will actually prevail. This action could conclude in a myriad of ways—title to the Disputed Land may be Swinger's, Vanderpol's, or the property of the United States. In addition, the Court must establish the common boundary between Vanderpol's land and the United States in order to quiet title to the Disputed Land. Since the Court should avoid premature adjudications, the Court DENIES Vanderpol's motion for summary judgment because it is not yet ripe for consideration.

4. Swinger's motions for discovery sanctions (Dkt. Nos. 22 and 29)

Swinger requests sanctions for Vanderpol's incomplete disclosure to his discovery requests. Under Fed. R. Civ. P. 37(a)(4), parties may file motions to compel disclosure or discovery. However, the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure. Fed. R. Civ. P. 37(a)(1). Here, Swinger requested documents (before the initial disclosure deadline) that "support [Vanderpol's] allegations" that the Nooksack has moved over time, that Vanderpol used the property to the exclusion of all others, that Vanderpol used the land for grass feeding, and that the common boundary line between the Vanderpol and US property has changed. (Lee Decl., Dkt. No. 24-1, Ex. A). While Vanderpol responded that no documents were yet available or the documents are protected as work product, which may have been evasive, Swinger did not meet and confer prior to filing his motion. The Court DENIES Swinger's request for sanctions

1 and ORDERS parties to meet and confer.  After the meet and confer, the parties may re-file the

2 motion concerning unresolved discovery issues.

3   5.   Swinger's motion for summary judgment (Dkt. No. 21)

4   Swinger seeks summary judgment on (1) Vanderpol's claim to quiet title, and (2)

5 Swinger's own counterclaim for unjust enrichment.

6   "The court shall grant summary judgment if the movant shows that there is no genuine

7 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

8 Civ. P. 56(a). There is no genuine issue of fact for trial where the record, taken as a whole, could

9 not lead a rational trier of fact to find for the non moving party. Matsushita Elec. Indus. Co. v.

10 Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

11 significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e).

12 Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting

13 the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the

14 truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v.

15 Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987)

16   Swinger's motion fails on both counts.  First, there is a genuine dispute over material fact

17 as to whether the Disputed Land is still a part of Swinger's property.  In general, when there is a

18 gradual and imperceptible deposit of sediment along the shore (an accretion) the upland owner

19 acquires title to the newly formed land, to the detriment of the owner of the bed; but when there

20 is an avulsion—a sudden change in the course of the stream—boundaries are unaffected. Strom

21 v. Sheldon, 12 Wash.App. 66, 69 (1974).  Here, Swinger's motion refers to documents

22 establishing his title, but a surveyor submitted an affidavit stating the river changed due to

1  accretion. At the least, this suggests either Vanderpol or the United States has some title or
2  interest in the land. (DeMeyer Decl., Dkt. No. 39, at ¶ 11.) Regardless, this case is in its infancy
3  and the rules pertaining to accretions, relictions, and avulsions are not mechanically applied. Id.
4  (noting the general rule "must yield" where the circumstances are "such that the full application
5  of that rule in favor of one riparian owner would destroy or substantially impair the riparian right
6  of another owner to access.") Since the record is not complete as to whether the Nooksack River
7  changed course due to accretion or avulsion and it is unclear how quiet title will impair the
8  riparian rights of either owner, summary judgment at the time is premature.

9  Second, as discussed above, Swinger's counterclaims are barred by the Anti-SLAPP
10 statute. Even if they weren't, however, Swinger's motion still fails. For unjust enrichment,
11 Swinger must establish that Vanderpol received a benefit, at Swinger's expense, and
12 circumstances that make it unjust for Vanderpol to retain the benefit without payment. First
13 American Title Ins. Co. v. Liberty Capital Starpoint Equity for Fund LLC, 161 Wn.App. 474,
14 490 (2011). Here, Swinger fails to submit any factual support for his counterclaim nor a reply on
15 his motion for summary judgment. Since there is nothing in the record to suggest Vanderpol has
16 received a benefit since title to the Disputed Land remains unresolved. The Court, therefore,
17 DENIES Swinger's motion for summary judgment.

18 **Conclusion**

19 The Court DENIES Swinger's motion to supplement the pleadings, GRANTS Plaintiff's
20 motion to dismiss, DENIES Plaintiff's motion for partial summary judgment, DENIES
21 Swinger's motion for discovery sanctions, and DENIES Swinger's motion for summary
22 judgment.

23 ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, DEFENDANT'S MOTION TO SUPPLEMENT THE PLEADINGS,
24 PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 8

1  The clerk is ordered to provide copies of this order to all counsel.

2  Dated this <u>8th</u> day of August, 2012.

3

4

                         Marsha J. Pechman
5                          United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23 ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, DEFENDANT'S MOTION TO SUPPLEMENT THE PLEADINGS,
24 PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9